Case number 18-2002. Bernard Mulder v. Int'l Brotherhood of Teamsters Pension Fund, Local 705. All arguments not to exceed 15 minutes per side. Mr. Mark S. Allard for the appellant. May it please the Court. My name is Mark Allard. I represent Appellant Bernard Mulder and I'm from Varner Murdering Schmidt and Howlett in Grand Rapids, Michigan. I have asked to reserve four minutes of rebuttal time for my argument. There are three basic issues I'd like to point out and deal with in this matter before the Court today in addition to what's in our briefs. First of all, the three documents that were never included in the administrative record. And they're the linchpins of the arguments that are being made by the Teamsters Pension Fund in this matter. They're the 1995 determination as to Mr. Mulder's early vested retirement benefit and the 2013 and 2014 letters where he was finally awarded his 30 and out pension benefit after 27 years of trying to get them. Those three documents are not in the administrative record and we have asked that the Court take judicial notice of those documents. The other two areas that I'll be talking about today will be the award of interest to Mr. Mulder and his $500 increase in benefit. First of all, I'd like to apologize for the bollocksed up process that this thing comes to the Court today, not just to the panel but to your professional staff. This is a difficult record to get through. The problem that we had was we were trying to establish 27 years of problems for Mr. Mulder to get his 30 and out pension benefit. On the other side of the coin, the Teamsters were going to argue, knowing they were going to argue, procedural issues as to 60-day appeal periods and statute of limitations. So when we get into this case and the Teamster starts out by saying, Mr. Mulder never came to us with this pension benefit question until 1995, we had to spend hours with Mr. Mulder, an 80-year-old man, digging through boxes in his barn to try to find documents to show that he did in fact make an application in 1986 for a 30 and out pension benefit. And he made an application in 1987 for a 30 and out pension benefit. The Teamsters cannot find any of his applications, not the 86, not the 87, not the 1995 application. In 86, Mr. Mulder makes his application for the 30 and out pension benefit and Mr. Mulder finds, when we get to this case and they say he's never even come to us before, Mr. Mulder finds 1986 letters from Dan Liguritis, the administrator of the fund, saying you need to talk about this thing. Mr. Mulder files an affidavit in the administrative record saying Mr. Liguritis, when he talked to me about it, told me to withdraw my 86 application because the benefit was going up by $500 in February of 1987. Mr. Mulder does that. He also finds a letter from the pension fund's lawyer in 1986, it's in the administrative record, saying the pension fund talked about your application at one of our meetings in late 1986. Now they were talking about a disability pension, but he had applied for a 30 and out pension benefit. So the Teamsters can't find any documents that relate to Mr. Mulder ever applying for the benefits. Not even in 1995 can they find the application. They admit it happened in 1995, but they can't find the application. So you're saying he applied in 1987 as well? Yes. But what happened to that application? It was never decided by the pension fund. They just kept asking for more records. And the administrative record is absolutely clear and it's unrefuted by the Teamsters fund. Mr. Mulder, when he filed the application after February 1st in 1987, was requested to provide documents over and over and over again. He had to go out and get documentation proving in 1956 he was working for a union. He didn't bring suit or do anything else. Instead, in 1995, he then sought pension benefits. Is that it? In 1995, since the 1987 decision hadn't been rendered, in 1995 he files a third application for pension benefits for the 30 and out pension benefit. And at that point, he's given benefits, but not the $1,000 that would be the 30 and out, but he's given the $300 plus. He's given an early vested pension benefit, which pays him 25% of what he's entitled to receive under the 30 and out pension benefit. And the letter that makes that determination in 1995 was never provided to me or to the attorneys who helped Mr. Mulder get his pension in 2011, his 30 and out pension in 2011. The determination letter which awards him his early vested benefit, paying him 25% of what he's entitled to receive, is not in the administrative record. But he knew what he was getting. Yes. Yes, he knew what he was getting. And that letter, Mr. Mulder continued to compile information and finally got an attorney involved in 2011 to give him the 30 and out pension benefit instead of the early vested benefit. The idea was that if he wasn't getting that 30 and out pension benefit, and if you look at the letter, Your Honor, 1995. The 95 letter? The 1995 letter, which was not in the administrative record and never provided to us as attorneys, when we asked for all letters, that letter doesn't say anything about the 30 and out pension benefit. It doesn't say anything about what Mr. Mulder should be doing to enhance his benefit. But isn't there an implication if he's getting what is in effect a 25% benefit, isn't there an implication he's been denied the 30 and out benefit and he should take action if he wanted to do something about it? Your Honor, I would respectfully submit that the Sixth Circuit has held that in the Vanderklot case in 1992, that those letters must contain specific references to what he needs to do in order to collect the different benefit. They don't even mention the different benefit in that 95 letter. And the other thing that's fatal about it, Your Honor, is it doesn't include the ERISA mandated language about filing an appeal within 60 days and filing litigation in the U.S. District Court. Was that language there in 95? It was not in that letter. No, but was the requirement there? Yes, it was. So I know your time is very limited. To cut to the chase, in 2011, he has a lawyer who helps him and he gets retroactive benefits. Yes, Your Honor. Which pay him the full $1,000 that he should have been getting for 30 and out. So we now get to your three key claims, which are interest, statutory fines, and I can't remember the third one. You'll tell me. The $500 increase. The $500 amount. Okay, so to go to the $500 amount, it appears that he is not entitled to that because he had to retire after February 1990. How do you address that merits argument? The merits argument is that the document itself, the Pension Plus Plus document, which was not provided to us until after the litigation was filed and after the appeal was filed, while we're in litigation after the appeal, that document doesn't say you have to have retired after February 1, 1987. In fact, the document says anyone who retired between February 1, 1987 and February 1, 1990 will be having a similar check sent to them mailed soon. And then if you look at the summary plan description that was provided to us that's in the administrative record, the ones dated February 1, 1987, that document says you will get a minimum of $1,000 per month if you are a 30 and out beneficiary. Why would you say a minimum if it's cut in stone to be $1,000 until 1990? So the SPD, Summary Plan Description, supports the idea you're going to get at least $1,000. And then when you get the document, it says that anyone between February 1, 1987 and February 1, 1990 will have a similar check mailed soon. You didn't seek those benefits, right? Pardon? You didn't seek these benefits from the plan, did you? The $500. Yeah, because the document relating to the $500 wasn't provided to us until, well, we filed our complaint because they hadn't sent an appeal. Then they come in and say, oh, we didn't get the appeal letter. Can we do an appeal now? And we all agreed to do an appeal. We didn't have the $500 document at that point either. And we said specifically in our appeal documents, which is in the administrative record, by the way, we still need this document to determine what his benefits should be. Okay, but you still could have gone back and asked for it. Pardon? Couldn't you still have gone back and asked for it? We did. We repeatedly asked for it, and they finally provided it to us, and then we amended our complaint to include the $500. I'm talking about the $500. You never asked the pension fund for it. You went directly to court, right? Your Honor, we – Do I misunderstand? The process is different. What happens was in 2014 we write to the pension fund and say, hey, give us all the letters, all the documents, all the plan documents, amendments and things like that. They send some of the documents to us. We then file a letter asking for an appeal. No appeal is scheduled. They just don't schedule an appeal. So under Sixth Circuit precedent, failure for them to accept the appeal after a certain period of time under the plan allows me to initiate litigation, and truthfully, I like the idea of not having an administrative record. So I filed my complaint, and then after we filed our complaint, they said, oh, we didn't know you wanted an appeal, so let's have an appeal now. And we said, fine. Give us all the documents. And we put right in our appeal brief, we don't have the Pension Plus Plus document, and they don't provide it to us before the appeal occurs. Is the Pension Plus Plus document an SPD? We believe it's a plan document, but it may not be an SPD. We believe it's a summary of an amendment to the plan. Remember, this is a multi-employer plan. This is what? A multi-employer plan. So what do you think it is? Not an SPD, but? I'm going to reserve on whether it's an SPD. I don't know specifically, but it is an amendment to the plan, and it's a document that needs to be produced when requested under Sixth Circuit precedent. And didn't the court conclude that you had received it, or that your client had received it, in several mailings? No. No, what the district court concluded was there was one letter sent. We asked for documents in September 2014. In October of 2014, we got a letter from the pension plan saying, here are the letters, the SPDs, the plan documents. And they did not include the Pension Plus Plus document. Remember, we don't have the Pension Plus Plus document. We're estimating, guessing, that it's consistent with Mr. Gligoritis' letter in 1986, that the benefit's going to increase in February of 1987. So we get the documents from them. The district court says, they told you you got all SPDs and plan documents. And that's the entire breadth of the analysis. But it's not in the administrative record. It's not in any documentation they can establish they sent it to us. And in fact, Mr. Ryan, counsel for the Teamsters, sends us the document after repeated requests, after the appeal is done, and after the litigation has started back up. He sends it to me by email in 1987. I'm sorry, 2017. So tell us when the record shows that your client first received the pension plan. The Pension Plus Plus document. It's in an email from September of 2017. I'm sorry, April 2017 from counsel here today. April 2017. And there isn't anything in the record that shows that your client had this document before then. There is not. Is there anything that shows that this document was sent to your client before then? No. Unless any of the judges have any questions, your red light's been on for a while. We'll obviously let you rely on your briefs for your other arguments. Thank you, Your Honor. May it please the Court, my name is Patrick Ryan. I'm here on behalf of the Defendant Appley Local 705 or International Brotherhood of Teamsters Pension Fund. Obviously our position is that the District Court got this. Could you raise your voice up, please? Certainly, Your Honor. Our position obviously is that we think the District Court got this case correct and we're asking the Court to affirm in all respects here. In our view, there's really just three issues that are properly before the Court. And some of them are familiar. Just it's a fairly standard ERISA benefits case in a lot of ways. But what is unique about it is the passage of time that has occurred from some of the key events. And obviously the Pension Fund sees that passage of time in a very different way from Mr. Mulder. I'd first like to address the $500 benefit issue that you were just discussing with Mr. Allard. Initially, I think the District Court is correct in finding that the issue is waived at the District Court level. The issue wasn't really argued in Mr. Mulder's briefs. And on that basis alone, I think you could affirm it. But I think the Court was also hinting at the fact that even on the merits, there's no claim here for Mr. Mulder for this $500 benefit. Our position is that this document is not an SPD. And I'll talk a little bit more about that later. But looking at the plain language of it, it says that the following improvements are for active members who retire on or after February 1, 1990. And after that is this additional $500 benefit. The precise date of Mr. Mulder's retirement is really not spelled out anywhere. But it's undisputed by the parties that it was at some point before April 1 of 1987. What about the language about those who retire between 1987 and 1990? Certainly, that's in the paragraph prior, and it's discussing different benefits entirely. Nothing in the structure of this document says that there are going to be additional benefits for early retirees. This one is specific to people who retire after February 1 of 1990. So what is that second paragraph of this document referring to? A check reflecting a similar increase will be mailed soon to those who retire between February 1, 1987 and February 1, 1990. Certainly, those are discussing cost-of-living increases that were mailed out to prior pensioners and cost-of-living increases going on. A $500 benefit on top of a $1,000 one is not a cost-of-living benefit. So when Mr. Mulder did retire and apply for his application in 1995, whatever rate was in effect under the plan would have been what was in there. And there really hasn't been any argument that that should have been different. But this $500 benefit was not something that took effect until 1990. The other basis on which I think the District Court's decision can be affirmed here is just the timeliness of the issue. And this is where, obviously, the pension fund sees this lapse of time very differently from Mr. Mulder. In our view, the operative date here is October 1995 when he first began receiving his pension. At that point, we think the clock started running to challenge any disagreement he might have with the amount he was receiving. So suppose that the fund had not told him of his right to appeal. Should that impact whether or not he should earn interest on the delay in payment of anything? So he got a settlement in 1995, right, of the $200,000-plus? Well, he got that in 2014. That was in 2014. Okay. So in 1995 was when he started getting the $300,000 per month. Correct. So I think if we weren't looking at such a substantial lapse of time, it might be more persuasive that not having the mandatory language in there would lean the equities towards giving interest. But also here, it's not a traditional denial of benefits as we typically see it. If we were saying you're not getting a pension and that language was not there, that would be certainly problematic. We gave Mr. Mulder a pension. We didn't tell him he wasn't entitled to anything. But it was from 1987 to 1995 that he didn't get anything, right? Correct. Okay. And you're not claiming that he waived that. He's giving you papers and it's sort of up in the air and he doesn't know what's going on. And then finally, so you give him some kind of unilaterally and I'm not exactly sure what happened. I guess he finally gave you all the papers you needed to show that he really was covered. And then you say, okay, but you're only entitled to a portion of it. And then it's not until 2014 that you clean everything up. And I realize that you expect people to make claims, but this is also money that he had earned. I mean, it was his money. So I don't know if you're, is it a statute of limitations problem or a latches problem? What is it that makes him not entitled to the interest on his money? Certainly, Your Honor. There's a couple of bases. One is how he gets the case before the court. There's really no statutory basis that we think is proper to bring a claim for interest only in this case. And the Seventh Circuit decided this issue directly in the case Claire v. Harris. Can you keep your voice up? I apologize, Your Honor. The Seventh Circuit decided this issue directly in the Claire v. Harris case. We don't have a case on that, do we? The Sixth Circuit, no, it does not. The Seventh Circuit and the Eleventh have ruled on this issue directly. Finding that ERISA Section 1132A1B does not provide a statutory basis for interest only. The Second Circuit did disagree and found that there is a basis to bring such a claim. The Eleventh Circuit, after that, considered the Second Circuit's opinion and still sided with the Seventh Circuit in that regard. Approximately how much would be his interest payment? That's a difficult question to answer because one of the things that was not resolved at the district court level is the appropriate interest factor. We would obviously argue for a much lower interest rate than Mr. Mulder. But it's definitely six figures and possibly into the millions. We're talking about a lot of money here. It is a lot of money, Your Honor. It absolutely is. Now, the Sixth Circuit didn't rule directly on this, but in the Rothschild case, and I don't know if I'm saying that name quite right, it does use language that very much echoes the Seventh Circuit's language in Claire. Claire talked about the complaint being that their benefits were not paid in a timely fashion and as a result they lost the time value of money. In Rothschild, the court says that in an action for wrongful denial of benefits like this one, the denial of benefits necessarily results in a continued withholding of benefits until the denial is either finalized or rectified. It's the denial that's the injury and the withholding is ancillary there, too. It's clear that if the pension fund had denied him a benefit and he sued, he'd have a much stronger argument to get interest, although there are still equitable factors to take into consideration there. But here, we paid him the benefit in January of 2014 after working with him and his counsel for multiple years to try to get the documents we needed. When did he first ask for interest on that money? The first request would have been the letter from Mr. Allard in either late 2014 or early 2015, but I don't recall seeing anything in the record where he was requesting interest prior to that. The district court also correctly pointed out that the plan does not specifically provide for interest on benefit payments. The trustees have the ability to interpret the plan documents, so to the extent that there's any question as to what the plan provides, I think the district court correctly deferred to their decision on that. Putting aside the trustees' decision, even if this court decides that there's a statutory basis or just a pure equitable basis for Mr. Mulder to bring his claim just for interest here, the district court exercised its discretion and found that the equities didn't really favor interest one way or another. One of the points made was that the fund has to be able to rely on the actuarial soundness of their obligations. Was that just an argument or was there any testimony or proof regarding that? It was just an argument. Obviously we didn't do any discovery at the district court level, but no, there was nothing in the administrative record that showed that we had done a separate analysis of this issue. There was a complaint that there was a likelihood that it would seriously affect the pension fund itself. The amount of money that it had would be significantly affected and the pension fund would be harmed in that way, right? Yes. That's certainly been our position from the outset, that the pension fund would be harmed by this type of, not just the number so much, but the delay here. When we start paying a benefit and 16 years later is when it's really challenged, it throws things into chaos. If this were to be something that occurred on a more regular basis and not being the outlier that it is, it would be particularly problematic. The pension plan itself is significantly responsible for the delay, isn't it? I don't think so, Your Honor. The parties obviously disagree about who's doing what and when here, but the pension fund has asked for additional documents. It did so before 1995 when Mr. Mulder was contacting them, which I really don't see the relevance of anything prior to 1995, but we'll concede that that happened. The problem is that nothing happened between 1995 and 2011. Then in 2011, once they were contacted by Mr. Mulder, the fund office worked closely with his attorneys at the Pension Rights Center and tried to give them what they were asking for. If we didn't quite get everything, it wasn't because of any malice. We thought we were giving them what we had and what we needed. But if he gets a letter in 1995, which is the first time that you're even acknowledging that he exists in the system, and he's getting a fraction of it, and there's no advice as to what he has to do to claim more. Obviously, this isn't somebody who's really very good at knowing what to do to protect his rights. He's taking you at your word, or that he's not going to get anything, anything more. There isn't even notice that he has to appeal if he wants more. I mean, it sounds like this guy is lucky that he wandered into the right place and somebody was there to help him, finally. Well, I think he was, and honestly, I think he was lucky to have help in the Pension Fund Office when he showed up in 2011. Because, frankly, if the fund office had asked for our legal advice at that time, we would have told them to deny anything at that point. It had been 16 years. Putting aside any pension appeal rights, the statute of limitations in Michigan is 6 years. In Illinois, it's 10 years. We've added the two of them together at that point. It's simply too late to be raising a claim like that. So the Pension Fund genuinely tried to help him when he came to them in 2011. So why, I guess I don't understand why, I mean, statutory interest numbers are a little crazy, but I don't understand why he shouldn't do, I mean, if he came back in in 2011, why not at least get the interest between 2011 and 2014? I don't understand the no interest. Well, and if there is to be interest, that would certainly be our position, that it should be limited from the time when he reached out to the fund in 2011 through 2014. Beyond that, I don't know what more I can offer other than the delay from 1995 to 2011 is really problematic for us. I would point out, too, that there is a 7th Circuit decision, it was a district court decision that was affirmed per curiam by the 7th Circuit with a similar delayed benefit where the participant wanted interest and it was affirmed that the fund did not act improperly by asking for documents to verify his entitlement to benefits. Because, remember, as of 2011 when Mr. Mulder came to us, the records that the fund office personnel were looking at showed that he had 25 years of service, not 30. And the last issue I just wanted to touch on briefly is Mr. Mulder's claim for statutory damages under Section 1132C1. We think the district court got that issue right as well. The district court essentially, I think, assumed that this document, this four-page document that was attached as Exhibit E to the First Amendment complaint was not a summary plan description, although it's not spelled out in the opinion. And that's certainly our position, that it's not. But what happens, if I understand correctly, there was a summary, an SBD, and then there was a change consisting of these supplement, these plus-plus benefits. Correct. And then did the plus-plus benefits ever get incorporated into the subsequent SBD? They would have been, yes. Yes, they would have been. Okay, so if somebody asked for their SBD between the time that the SBD has been amended, aren't they entitled to that summary, the plus-plus summary, because the SBD is not going to inform them of their rights? We certainly weren't trying to deny Mr. Mulder access to this document. And we really didn't know what he was asking for. We were asked for a summary plan description. We gave him summary plan descriptions. Eventually we were able to figure out it's this document. This is not a document that the fund office looks at when they're calculating benefits. They look at the plan, they look at the SBD. This was an informative bulletin that was sent to participants 30 years ago. So we're happy to provide these type of records. We don't think we have a statutory obligation to, but it's not a summary plan description. Let's say he retired after 90. Yes. And he wanted to know about his benefits. I mean, were those benefits discontinued or were they rolled in? Those benefits are ongoing. So anybody who has been receiving that additional benefit would still be receiving it. Okay, so how would somebody who was entitled to it know about it? It would be in a later summary plan description. Did he ever ask for all the SBDs between when he was going to retire, say, 86 or 87, and the current date, post-2011? Off the top of my head, I believe so, but I can't say for sure. So when you produced these various SBDs, there would have been something in one of them that indicated that for people who retire after 1990, they would be getting extra benefits? I believe so, yes. Okay, so you're saying it was in an SBD. Which one? I don't remember the precise date it took effect. It probably would have been 91, 92, but I don't have that information handy. What is the date of this document, do we know? This one, the little four-page document? Yes. That would have been, I don't know that it has a date on it. I couldn't see one offhand. So do we have any idea when this was created? I could only ballpark it, Your Honor. And when do you think they received a copy? What's your position on when they first received a copy of that? I know that they got it when I sent it to Mr. Allard in 2017. I don't have any evidence they got it before that. But again, it's not because we were trying to deny it. We didn't know what they were looking for. So, he never had a determination by the fund that he wasn't entitled to that money? Correct. Aside from everything that's gone in in this case. Right. So should there be an opportunity for the fund to decide whether he's entitled to the $500 extra? We would be open to presenting it that way, certainly. I could present it to the trustees. Have you, both sides, thought about mediating this with our circuit mediator, mediating this dispute? We did have a mediation. It did not last long and it did not get very far. Any further questions? Thank you very much. Thank you. I've been practicing ERISA law in the 6th Circuit for 34 years. Say that again? I've been practicing ERISA law in the 6th Circuit for 34 years. It's a great circuit to be representing a pension plan on ERISA issues. Our rules are clear from Wilkins on what you have to do, what you have to produce. And the plan, if it follows those steps, has a pretty good success rate in the 6th Circuit. That hasn't happened here. The documents that we're, the counsel just admitted to it, he goes, we didn't send them this, he called it an informational document. It's a material modification. We're talking about a 33% increase, or a 50% increase in a benefit. That we didn't know what they were asking for? We gave them, we told them every single thing we could. We gave them Mr. Gerligeritis' letter saying come and talk to me about this because I want you to withdraw your 86 application and file it after February 1st, 1987. He did everything he could possibly do. And this court in Bartling, which is cited in our brief, citing to ERISA section 104B4, said the courts in the 6th Circuit should favor disclosure of documents if it will help the beneficiary determine his benefits, his or her benefits. The document that we're asking for is specifically a document that should have been produced. Not only for the $110 a day penalty, but because it's the only way he even knew what the benefit was supposed to be. And the court asked the right question. In 1995, if you never told him to appeal, never told him how to, that he had to file litigation, and we have an individual who's not represented by counsel, that can't be the trigger date for anything. That can't what? Cannot be the trigger date for a laches argument, a statute of limitations argument, or a 60-day appeal argument. Otherwise, the mandate from the ERISA regulations, which this court has incorporated into the 6th Circuit precedent, would be meaningless if you don't have to include that information, especially when you have a non-represented individual making the request. So when did, I'm sorry? Counsel, what is the amount of interest you're claiming here? Well, we asked, I don't have a number, but I can tell you this. If it's 4%, it's between, I think between $350,000 and $400,000. If it's return on investment, it's $3 million. And that's why we asked for the return on investment stuff. Interestingly, we got caught in the Rockwell gap. Initially, Rockwell said, if a benefit's delayed, you can get interest at the return on investment rate. We drafted our complaint with Rockwell 1 in mind, our initial complaint. Then Rockwell en banc was decided, probably in this courtroom. And in the en banc decision, the return on investment aspect of Rockwell was pulled back. But not because it's the law in the 6th Circuit, you can't get the return on investment. It was in that case it didn't apply. So you would go back to the district court and then have considerably more litigation, right? I would hope not, but yes, we're going to have more litigation when we go back to the district court. And the idea would be to determine what is a reasonable return for someone who didn't get his benefit for 27 years. And it's interesting, counsel wants to pin us and say, in 1995 we didn't tell you you could have filed your appeal, but now it's hard for us after 16 years. Let's talk about an individual who didn't receive his pension after working for 30 years, not getting it for 27 years. That's what Rockwell looks at. It's not punitive. It's a payment to make up for the failure to pay the benefit on time. And that's all Mr. Mulder's asking for here. Give me the money that I would have earned. Thank you very much. Do you have any further questions for me? Thank you very much. Thank you. Thank you both for your argument. The case will be submitted and with the clerk adjourn court. This honorable court is now adjourned.